## BERRY v. UNITED STATES.
### No. 49288.

United States Court of Claims.
Decided Oct. 7, 1952.

---

The court, upon the facts as stipulated by the parties, the briefs and argument of counsel, makes the following

## Special Findings of Fact

1. On July 6, 1910, the plaintiff was appointed to and entered the United States Naval Academy as a Midshipman and graduated therefrom on June 5, 1914. He accepted a commission as an Ensign, United States Navy, on June 6, 1914, and thereafter served continuously as a commissioned officer in the United States Navy until February 15, 1926, when he resigned. He accepted appointment as Lieutenant Commander, United States Naval Reserve, on April 6, 1926, and performed active duty for training as an officer of the Naval Reserve from May 29, 1926, to June 13, 1926; from May 10, 1928, to May 19, 1928; and performed active duty from February 11, 1941, until February 1, 1947, when he was released from all active duty.

2. On April 1, 1946, the plaintiff, who was then serving on active duty with the rank of Commander in the Naval Reserve, sent the following letter to the Secretary of the Navy:

"1. It is requested that I be placed on the retired list of the Navy with pay in accordance with Section 6, Public Law 305 of the 79th Congress, to take effect on or about 1 September 1946, the expiration date of my accumulated terminal leave as requested below.

"2. Retention on active duty until 1 May 1946 has previously been requested. It is, therefore, further requested that I be placed in an inactive status on or about that date (1 May 1946) and that I then be granted my accumulated terminal leave which, according to my records, should amount to one hundred and twenty days; and on the expiration of this terminal leave that I be placed on the retired list as requested in paragraph 1 of this letter.

"3. For purposes of computing pay rates, the following information is submitted: I was in active service as a commissioned officer in the regular Navy on and prior to 12 November 1918; I have had over twenty years active service in the Navy and Naval Reserve, over ten years of which was active commissioned service."

3. On May 18, 1946, while serving on active duty, the Chief of Naval Personnel issued the following orders to the plaintiff:

"1. When directed by your commanding officer, report for a physical examination in accordance with reference (a). If Hospitalization is required, you will be detached from duty, ordered to an appropriate hospital, and these orders endorsed in accordance with reference (b). Further compliance with these orders is delayed until you are ready for discharge from treatment. At that time, the medical officer in command will perform the duties of the commanding officer referred to in the balance of these orders.

"2. When directed by your commanding officer, proceed and report to a Civil Readjustment Officer for and (sic) interview. Upon completion of the interview, return to your duty station or the hospital at which you are a patient, and when directed on or about 1 June 1946, you will regard yourself detached from all duty, await orders pending retirement. You will proceed to your home. If hospitalization was required, upon discharge from treatment await orders pending retirement. You will proceed to your home. You will complete all travel within one year from date of detachment; or, if under treatment, within one year from date of discharge from treatment but not later than one year from date of retirement; or within one year after

termination of the war, whichever is later.

"3. Immediately upon detachment, you will report your mail address and subsequent changes thereof to the Bureau of Naval Personnel and to the commandant of the naval district in which you reside. Comply also with Articles 134 and 135 Navy Regulations (1920).

"4. Immediately upon detachment, you will furnish the Bureau of Naval Personnel and the disbursing officer carrying your pay accounts a copy of these orders bearing all endorsements, including the date of detachment.

"5. Upon being placed on the list of retired officers of the U. S. Navy on 1 September 1946, you will regard yourself relieved of all duty in the U. S. Navy.

"6. During the period between date of detachment and date relieved of all active duty, you may, at your option, wear civilian clothes: and while wearing civilian clothes, you are authorized to engage in any occupation not contrary to law."

The foregoing orders bore the following endorsements:

"End-1 on BuPers Orders Pers 31528–MES–2A dtd 18 May 1946
"29 May 1946
"To: Commander Albert G. Berry Jr., (S), USNR, #8702.
"Via: Commandant, U. S. Naval Base, Terminal Island (San Pedro), California.
"Subj: Relieved all active duty; to home.
"Forwarded for delivery and compliance, readdressed as indicated.
"/s/   J. B. OLDENDORF,
Comdt., 11ND.
"CC: BuPers
DirService
"End-2 On BuPers Orders Pers 31528–MES–2A dtd 18 May 1946
"4 June 1946
To: Commander Albert G. Berry Jr., (S), USNR, 8702.
Subj: Relieved of all active duty; to home.

1. Delivered and detached this date. You will further report this date to the Commanding Officer, Officer Personnel Separation Center, Naval Reserve Armory, 850 Lilac Terrace, Los Angeles, Calif, to be relieved of all active duty in accordance with basic orders.

"2. Adequate public quarters were not available for assignment at this station.
"/s/ L. J. WILTSE,
Commandant,
U. S. Naval Base,
Terminal Island (San Pedro) Calif.
"CC: BuPers
Com–11
4 June 1946
Received at 1450 this date.
5 June 1946
Arrived Separation Center La.
Reported 0927 this date.
"CERTIFIED TO BE A TRUE COPY:
/s/   A. G. BERRY JR.
"End 3. on BuPers orders 83550,
Pers–31528–MES–2A
dated 18 May 1946
"6 June 1946
"From: Commanding Officer
"To: Commander Albert G. Berry, Jr., (S) USNR, 8702
"Subj: Relieved all active duty; to home

1. Reported 5 June 1946.

2. Paragraphs 1 and 2 of basic orders complied with.

3. Detached this date. Carry out remainder of basic orders.
/s/ J. C. HUNTER
"CERTIFIED TO BE A TRUE COPY:
/s/A. G. BERRY, JR."

4. Plaintiff was not placed on the retired list on September 1, 1946, as had been contemplated by the said orders of May 18, 1946. On October 4, 1946, the following orders were issued to the plaintiff:
"4 October 1946
"From: The Chief of Naval Personnel.
"To: Comdr. Albert G. Berry, Jr., (S), USNR, 258 South Lasky Drive, Apt. C, Beverly Hills, Calif.
"Subject: Orders.

1. The unexecuted portion of your release from active duty orders of 18 May 1946 is hereby cancelled.

2. You will proceed immediately to San Francisco, California, and report to the Commandant, Twelfth Naval District for duty and when directed by him for duty as Officer in Charge, Fleet Post Office, San Francisco, California.

"/s/ LOUIS DENFELD"

5. Pursuant to said orders plaintiff reported to his new assignment on October 20, 1946, and thereafter remained in an active duty status until he was retired on February 1, 1947.

6. On December 17, 1946, the following orders were issued to the plaintiff:

"From: The Chief of Naval Personnel.

"To: Comdr. Albert G. Berry, Jr., (S), USNR, Naval Training Center, San Diego, Calif.

"Via: Commander.

"Subject: Orders relieving you of all active duty.

"Reference: (a) Joint ltr. 45-998, Navy Dept.

"Bulletin 15 August 1945.

"1. When directed by your commanding officer, you will report for a physical examination in accordance with reference (a). If hospitalization is required, you will be detached from duty and ordered to an appropriate hospital by your commanding officer, and these orders endorsed accordingly; in such event the Medical Officer in Command shall immediately advise the Bureau of Naval Personnel (attention Pers–325) by dispatch, the diagnosis, prognosis, and probable period of hospitalization. If hospitalized, further compliance with these orders is delayed until you are ready for discharge from treatment. At that time, the medical officer in command will perform the duties of the commanding officer referred to in the balance of these orders.

"2. When directed by your commanding officer, proceed and confer with a Civil Readjustment Officer who will explain the benefits of Public Law 346, 78th Congress, G. I. Bill of Rights, 38 U.S.C.A. § 693 et seq.; upon completion, return to your duty station or to the hospital at which you are a patient.

"3. When directed by your commanding officer, on 30 January 1947, you will regard yourself detached from your present duties; await orders pending retirement. You will proceed to your home. If hospitalization was required in accordance with paragraph two above, you will, upon discharge from treatment, await orders pending retirement. You will proceed to your home. You will complete all travel within one year from date of detachment; or, if under treatment, within one year from date of discharge from treatment; but not later than one year from date of retirement; or within one year after termination of the war, whichever is later.

"4. Upon detachment or discharge from treatment, to await orders pending retirement, furnish the Bureau of Naval Personnel, one copy and the disbursing officer carrying your pay accounts four copies of these orders bearing all endorsements. Also report your mail address and subsequent changes thereof to the Bureau of Naval Personnel (attention Pers–325), to the commandant of the naval district in which you reside, and to the disbursing officer carrying your pay accounts. Comply also with Articles 134 and 135, Navy Regulations, 1920.

"5. During the period between date of detachment and date relieved of all active duty (date of retirement), you are authorized to engage in any occupation not prohibited by law for military personnel.

"6. You will regard yourself relieved of all active duty in the U. S. Navy on 1 February 1947. A letter from the Secretary of the Navy formally placing you on the retired list as of that date will be forwarded to you shortly thereafter.

"LOUIS DENFELD"

7. On January 9, 1947, the Chief of Naval Personnel sent the following letter to the Secretary of the Navy:

"To: The Secretary of the Navy (Judge Advocate General).

"Subj: Transfer to the Retired List after more than 20 years' service.

"1. Forwarded, recommending that the attached request of Commander Albert G. Berry, Jr., U. S. Naval Reserve, to be transferred to the retired list of officers of the Navy after the completion of more than twenty years' service, be transmitted to the President of the United States during the month of January 1947, with the recommendation that said application be approved effective 1 February 1947, in accordance with the provision of U. S. Code, Title 34, Section 410b.

"2. The permanent status of this officer is Lieutenant Commander. He is now serving under a temporary appointment in the rank of Commander.

By direction of Chief of Naval Personnel.

"/s/ C. W. Moses
Captain, USN
Officer Performance Division"

8. Plaintiff was placed on the retired list of officers of the Naval Reserve with the rank of Commander on February 1, 1947, in accordance with the said orders of December 17, 1946.

9. Plaintiff has received no active-duty pay and allowances or retired pay for the period September 1, 1946, through October 19, 1946. Beginning February 1, 1947, plaintiff was paid retired pay computed at 62½ per centum of the active-duty pay of a Commander in the Navy with over 24 years' service. In September 1947, plaintiff was credited with the additional sum of $452.40 for the period February through September, which sum represented an increase in retired pay of $56.55 per month. The stipulation of the parties does not establish the reasons for this temporary increase. Since October 1, 1947, plaintiff has continued to receive retired pay at the 62½ per centum rate.

Fred W. Shields, Washington, D. C. (King & King, Washington, D. C., were on the briefs), for the plaintiff.

Ernest C. Baynard, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This action is brought by a retired Commander in the United States Naval Reserve to recover (1) the active-duty pay and allowances allegedly due him for the period September 1, 1946, through October 19, 1946, and (2) the difference between the retired pay actually received by him since February 1, 1947, computed on the basis of 62½ per centum of his active-duty pay at the time of his retirement pursuant to the provisions of the Act of February 21, 1946, ch. 34, §§ 6, 7, 60 Stat. 27, 34 U.S.C.A. §§ 410b and 410c, and retired pay computed on the basis of 75 per centum of active-duty pay under the provisions of the Pay Readjustment Act of June 16, 1942, ch. 413, § 15, 56 Stat. 367, 37 U.S.C.A. § 115.

Plaintiff entered upon active duty in the United States Navy as an Ensign on June 6, 1914, immediately following his graduation from the United States Naval Academy. He served continuously for over 11 years, including the period of World War I, before resigning his commission on February 15, 1926. However, on April 6, 1926, plaintiff accepted an appointment as Lieutenant Commander in the United States Naval Reserve, and thereafter, until 1941, entered upon active duty only for brief periods of training. Plaintiff was recalled to active duty on February 11, 1941, and served continuously, as hereinafter described, throughout World War II and until his retirement as a Commander on February 1, 1947.

On April 1, 1946, plaintiff wrote to the Secretary of the Navy, requesting that effective September 1, 1946, he be retired under the provisions of 34 U.S.C.A. §§ 410b and 410c, supra, on the basis of more than 20 years' active service. In compliance

with this request, the Chief of Naval Personnel on May 18, 1946, issued orders directing that plaintiff be detached from duty on or about June 1, 1946, to await retirement. The orders stated further that:

"5. Upon being placed on the list of retired officers of the U. S. Navy on 1 September 1946, you will regard yourself relieved of all duty in the U. S. Navy."

At the expiration of plaintiff's terminal leave on September 1, 1946, orders were not forthcoming placing plaintiff on the retired list, as had been contemplated by the orders of May 18, 1946. Plaintiff received no information with respect to his status in the Navy until October 4, 1946, when orders were issued cancelling the unexecuted portion of his "release from active duty orders of 18 May 1946," and directing him to report immediately for active duty as Officer in Charge of the San Francisco Fleet Post Office. Plaintiff reported for active duty as directed on October 20, 1946, but on December 17, 1946, received orders that he would again be detached from duty on January 30, 1947, to await retirement. Effective February 1, 1947, plaintiff was placed upon the retired list of Naval Reserve officers in the rank of Commander and was credited with over 24 years of active service.

Plaintiff received neither active duty nor retired pay for the period September 1 through October 19, 1946, following the expiration of his terminal leave and prior to the cancellation of his orders of May 18, 1946. Plaintiff insists that it was the intent of his orders of May 18, 1946, to retain him in an active-duty status until such time as he was actually retired, and that hence he is entitled to receive the active-duty pay and allowances of an officer of his rank and length of service under the terms of § 7 of the Naval Reserve Act of June 25, 1938, ch. 690, title I, 52 Stat. 1176, as amended, 34 U.S.C.A. § 853e, which provides in part as follows:

"Commissioned officers exclusive of chief warrant officers of the Naval Reserve, including those on the honorary retired list or who may have been retired, when employed on active duty or on training duty with pay or when employed in authorized travel to and from such duty shall be deemed to have been confirmed in grade and qualified for all general service and shall receive the pay and allowances, including longevity pay, as provided by law for the reserve·forces of the United States, and shall when traveling under orders or under competent authority receive transportation in kind, mileage, or actual expenses as provided by law for travel performed by officers of the Regular Navy. * * *"

Also, plaintiff maintains that the orders issued to him on October 4, 1946, in providing for the cancellation of the unexecuted portion of his orders of May 18, 1946, and in directing him to report for further duty, afford additional evidence that it was the intent of the Navy to retain him in an active-duty status throughout this entire period.

Defendant argues that plaintiff's right to active-duty pay and allowances depends upon the effect which the Secretary of the Navy intended to be given to plaintiff's orders of May 18, 1946; that under these orders the Secretary of the Navy intended for plaintiff to be in an active duty-awaiting orders status until September 1, 1946; and that after this date the Secretary of the Navy did not intend for him to continue indefinitely in an awaiting-orders status when his retirement was not effected in the manner originally contemplated. Instead, defendant contends that the Secretary of the Navy obviously intended plaintiff to revert to inactive duty on this date inasmuch as it was not necessary that he be in an active-duty status at the time of retirement. Moreover, defendant asserts that under § 5 of the Naval Reserve Act of 1938, supra, 34 U.S.C.A. § 853c, which provides that the Secretary of the Navy may release any member of the Naval Reserve from active duty either in time of war or in time of peace, the result of the Secretary of the Navy's orders of May 18, 1946, was to cause plaintiff's reversion to inactive duty as a matter of law.

Defendant's arguments in substance are but a reiteration of the conclusions reached

by the Comptroller General in rejecting plaintiff's claim for active-duty pay and allowances. 26 Comp.Gen. 681. In advancing these arguments, and in endeavoring to ascertain the intention of the Secretary of the Navy with respect to plaintiff's status during this interim period, both defendant and the Comptroller General have disregarded what we believe to be the most pertinent source of this intention. In our opinion, the orders issued by the Secretary of the Navy on October 4, 1946, expressly cancelling the unexecuted portions of the orders of May 18, 1946, present a clear indication that the Secretary of the Navy regarded plaintiff as being in an active-duty status during this period. The only material portion of the May 18 orders which had not been previously executed, and which thus remained to be cancelled, was the provision retaining plaintiff on active duty until the issuance of retirement orders. But if defendant were correct in contending that the Secretary of the Navy intended plaintiff on September 1, 1946, to revert from an active duty-awaiting orders status to an inactive-duty status, even this provision of the May 18 orders would have been executed, and hence there would have been nothing left to have been cancelled by means of the October 4 orders.

Certainly the Secretary of the Navy did not intend to be taking a useless step in issuing the October 4 orders. Consequently, when the orders of October 4 are considered in connection with all of the other relevant facts and circumstances, the conclusion is inescapable that the Secretary of the Navy intended the May 18 orders to place plaintiff in an active duty-awaiting orders status *indefinitely* until either retirement orders were actually issued, or as was done here, additional orders were issued altering that status.

Moreover there appears to be no justification for defendant's contention that plaintiff reverted to inactive duty as a matter of law on September 1, 1946, when his retirement orders were delayed. Section 853c, supra, in authorizing the Secretary of the Navy to release Naval Reserve officers to inactive duty, seems to contemplate affirmative action on his part in achieving this re-

sult. Cf. Van Zante v. United States, 62 F.Supp. 310, 104 Ct.Cl. 480. In the absence of such affirmative action releasing plaintiff from active duty in the instant case, we hold that plaintiff continued on his active-duty status and is entitled to receive the active-duty pay and allowances of an officer of his rank and length of service during the period September 1, 1946, through October 19, 1946.

■■ Plaintiff next contends that he is entitled to retired pay computed upon the basis of 75 per centum of his active-duty pay under the terms of the fourth paragraph of § 15 of the Act of June 16, 1942, supra, 37 U.S.C.A. § 115, instead of the retired pay which he now receives at the rate of 62½ per centum of his active-duty pay under the provisions of the Act of February 21, 1946, supra, 34 U.S.C.A. §§ 410b and 410c. The statutes under which plaintiff now receives retired pay provide as follows:

"§ 410b. When any officer of the Regular Navy or the Regular Marine Corps or the Reserve Components thereof has completed more than twenty years of active service in the Navy, Marine Corps, or Coast Guard, or the Reserve Components thereof, including active duty for training, at least ten years of which shall have been active commissioned service, he may at any time thereafter, upon his own application, in the discretion of the President, be placed upon the retired list on the first day of such month as the President may designate.

"§ 410c. * * * Officers retired pursuant to the foregoing sections of this Act shall receive retired pay at the rate of 2½ per centum of the active-duty pay with longevity credit of the rank with which retired, multiplied by the number of years of service for which entitled to credit in the computation of their pay while on active duty, not to exceed a total of 75 per centum of said active-duty pay: * * *."

The portion of 37 U.S.C.A. § 115 upon which plaintiff says he is entitled to rely, is as follows:

"The retired pay of any officer of any of the services mentioned in the title of this Act [*Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service*] who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement." [*Italicized material inserted.*]

Plaintiff insists that he fulfills all of the requirements of the above-quoted provision because (1) he performed active duty as an officer in the Navy during World War I and prior to November 12, 1918, and (2) he was "hereafter retired under any provision of law," having been retired pursuant to the above-quoted sections of the Act of February 21, 1946. Also, plaintiff urges that since this provision applies to *any officer* of the Navy, the fact that he was a member of the Naval Reserve at the time of his retirement offers no bar to his recovery of the increased retired pay. However, defendant argues that this portion of § 115 is limited in its application solely to officers retired from the Regular Navy, and does not apply to officers retired from the Naval Reserve. We must, therefore, decide whether or not Congress intended this portion of § 115 to apply to officers of the Reserve components of the Navy.

Three factors lead us to conclude that Congress intended the fourth paragraph of § 115 to be limited to officers of the Regular components of the Navy and of the other services named in the title of this Act. In the first place, at the time of the enactment of this provision officers of the Reserve components of the Navy could be retired upon only a limited number of grounds such as a disability incurred in line of duty, 34 U.S.C.A. § 855c–1, or under certain conditions, upon the completion of long years of active service, 34 U.S.C.A. § 855i. In general, the retirement laws applicable to officers of the Regular Navy were not applicable to officers of the Naval Reserve. Hence, in view of these previous limitations placed upon their retirement rights, it is extremely doubtful that Congress intended to extend the benefits of the provision in question to officers of the Naval Reserve.

In the second place, throughout the entire Pay Readjustment Act of 1942, supra, Congress plainly designated those provisions which were intended to apply to the Reserve components of the various services named in the title of the Act. For example, certain sections of the Act were expressly made applicable to personnel of "any of the services mentioned in the title of this Act, including Reserve components thereof", or to personnel of "any of the services mentioned in the title of this Act and members of the Reserve forces of such services". See 37 U.S.C. (1946 Ed.) §§ 112, 118, 119. Other provisions of the Act were limited in their application solely to personnel of the Reserve forces. 37 U.S.C. (1946 Ed.) §§ 103, 114. The omission of any reference to the Reserve forces in the fourth paragraph of § 115, when considered in connection with the careful references contained in the other sections of the Act, must, we believe, be taken as compelling evidence that Congress did not wish to provide retired pay at 75 per centum for Reserve officers who served prior to November 12, 1918.

Resort to the third source, the legislative history of the fourth paragraph of § 115, reveals much additional matter to support the conclusion we have drawn from the other factors that Congress intended this provision to be limited to officers of the Regular Navy. This paragraph did not appear in § 15 of the original bill introduced in the Senate. S. 2025, 77th Cong., 2d Sess. However, in the course of the hearings upon this bill by the House Committee on Military Affairs, on April 15, 1942, p. 50, a spokesman for the Navy pointed out that by the provisions of the Act of June 13, 1940, ch. 344, § 3, 54 Stat. 380, 10 U.S.C.A. § 971b [1] any officer of the

---

1. Section 971b of Title 10, United States Code Annotated, provides in pertinent part: " * * * That any officer on the active list of the Regular Army or Philip-

Regular Army who served in any capacity as a member of the military or naval forces prior to November 12, 1918, received retired pay computed upon the basis of 75 per centum of his active duty pay at the time of retirement. As a similar provision had not been enacted for officers of the Navy who served during World War I, the spokesman recommended an amendment of the bill to eliminate this discrimination. The provisions of this amendment were substantially the same as those subsequently enacted as the fourth paragraph of § 115.

No action appears to have been taken on this recommendation by the House Committee. However, on May 12, 1942, during the consideration of S. 2025 on the floor of the House of Representatives, Congressman Maas offered the identical amendment to the bill. In the discussion which preceded the passage of the amendment, 88 Cong. Rec. 4126, the following pertinent debate took place:

"Mr. Maas. * * * I am now offering an amendment which will not affect the retired pay of anybody now on the retired list, but will simply bring the Navy into conformity with the existing law covering the Army.

It has been repeatedly stated that the Army and Navy should be treated alike. The pay bill is supposed to be one pay bill for all alike. All services should come under one system of pay, but unfortunately a specific provision was passed for World War officers in the Army and did not include the Navy or Marine Corps.

* * * * * *

"Mr. Maas. * * * All my amendment does is to enact for the Navy the existing law for the Army, which is that any World War officer in the Navy who may hereafter be retired shall be retired on 75 percent of his

pay, which is existing law for the Army.

"Mr. Vinson, of Georgia. Will the gentleman yield?

"Mr. Maas. I yield to the gentleman from Georgia.

"Mr. Vinson, of Georgia. The effect of the gentleman's amendment would be to carry out for the Navy what was provided in the act of June 13, 1940, for the Army?[2]

"Mr. Maas. Yes; and it should have been done for the Navy at that time, but unfortunately it was not. I think it is the sense of the House and the Congress that the same laws on pay shall apply to both the Army and the Navy, as well as to the Coast Guard and Marine Corps. All I am asking is that existing law for the Army be extended to the Navy and Marine Corps.

* * * * * *

"Mr. May. It will affect those who are hereafter retired and put them on an increased basis over what they are now getting?

"Mr. Maas. It will put them on exactly the same basis as the Army, and the gentleman sponsored that bill. It will accord to naval officers who have served in the World War and who are retired hereafter the same benefits they would get if they were Army officers and were retired hereafter."

These remarks upon the floor of the House of Representatives were also considered by us in Danielson v. United States, 102 F.Supp. 575, 121 Ct.Cl. 533, in an effort to discover the purposes and intent of Congress in enacting the fourth paragraph of § 115. In the Danielson decision we concluded that the amendment offered by Con-

pine Scouts who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, shall upon his own application be retired with annual pay equal to 75 per centum of his active-duty annual pay at the time of his retirement * * *."

2. 54 Stat. 379, § 3, p. 380, 10 U.S.C.A. § 971b.

gressman Maas was not included in the bill as passed, and that unfortunately there was no debate of a revealing nature on this paragraph as finally enacted. Upon reviewing the language of the Maas Amendment, and the language of the fourth paragraph of § 115 as passed, we find that their terms *were* substantially the same, and thus, that despite our earlier conclusion, we do have before us revealing evidence of the intended scope of this paragraph. The only change made in the enacted version of the fourth paragraph of § 115 was to extend its benefits to officers of the Coast and Geodetic Survey, and the Public Health Service. Consequently we have before us the statement of the author of the provision in question, accepted and acted upon by Congress, that the fourth paragraph was designed to do no more for the Navy and other named services of the United States than had already been done by Congress for the Army under the provisions of the 10 U.S.C.A. § 971b. Since § 971b expressly limits the recovery of retired pay based upon 75 per centum of active-duty pay to retired officers of the Regular Army serving prior to November 12, 1918, it is apparent that the fourth paragraph of § 115 must be held to limit the recovery of such pay to retired officers of the Regular Navy and of the Regular components of the other services named therein. Cf. Comp.Gen.Dec. B–63359, May 6, 1947; 26 Comp.Gen. 934; Comp.Gen.Dec. B–102149, Aug. 13, 1951. On the strength of this and the other persuasive factors, we hold that plaintiff, having been retired from active service as an officer in the Naval Reserve, rather than as an officer in the Regular Navy, does not qualify to receive retired pay computed at the rate of 75 per centum of his active-duty pay.

Plaintiff is entitled to recover the active-duty pay and allowances of a Commander credited with his years of service for the period September 1, 1946, through October 19, 1946. The entry of judgment is suspended pending the filing of a report by the General Accounting Office showing the amount due plaintiff in accordance with this opinion.

It is so ordered.

JONES, C. J., and MADDEN, WHITAKER and LITTLETON, JJ., concur.