## REYNOLDS v. UNITED STATES.
### No. 311.

United States Court of Claims.

May 5, 1953.

Frank F. Reynolds, pro se.

Ernest C. Baynard, Washington, D. C., with whom was Asst. Atty. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff, a retired naval officer sues to recover the difference between the retired pay actually received by him as a Lieutenant Commander on the Naval Reserve Retired List during the period of November 1, 1950, to March 6, 1951, computed on the basis of 32.41 percent of his active duty pay at the time of his retirement, pursuant to the provisions of Title III of the Army and Air Force Vitalization and Retirement Equalization Act of June 29, 1948, 62 Stat. 1081, 1087, as amended, 34 U.S.C.A. §§ 440i, 440j, and retired pay computed on the basis of 75 percent of active duty pay under the provisions of the Pay Readjustment Act of June 16, 1942, Sec. 15, 56 Stat. 359, 367, as amended 37 U.S.C.A. § 115.

There is no dispute as to the facts, and the case comes before the court on plaintiff's and defendant's motions for summary judgment.

Plaintiff entered upon active duty in the United States Navy as an Ensign on March 7, 1912, following his graduation from the United States Naval Academy. He served continuously until July 7, 1915, at which time he resigned his commission as a Lieutenant (jg). March 27, 1917, plaintiff was commissioned a Lieutenant (jg) in the United States Navy, Fleet Reserve and served on active duty until August 29, 1919, when he was placed on inactive duty status until his enrollment in the Fleet Reserve expired on April 17, 1921.

January 3, 1925, plaintiff was commissioned a Lieutenant Commander in the United States Naval Reserve. This enrollment expired January 3, 1929. On August 9, 1940, plaintiff was again commissioned in the Naval Reserve and remained therein either on active duty or in an inactive duty status until his retirement on November 1, 1950.

From November 1, 1950, until March 6, 1951, plaintiff received retired pay at the rate of $157.03 per month. On the latter date he became a civilian employee with the United States Government and his retired pay was then suspended.

Plaintiff contends that he is entitled to retired pay computed upon the basis of 75 percent of his active duty pay under the terms of 37 U.S.C.A. § 115, supra, instead of the retired pay which he received at the rate of 32.41 percent of his active duty pay under the provisions of the 1948 Act, supra, 34 U.S.C.A. § 440j, supra. The statute under which plaintiff received his retired pay provides in part as follows:

"§ 440i. RETIRED PAY—(A) AGE AND SERVICE QUALIFICATIONS.

"Any person who, upon attaining or having attained the age of sixty years, has performed satisfactory Federal service as defined in this section in the status of a commissioned officer, warrant officer, flight officer, or enlisted person in * * * the United States Navy including the reserve components thereof * * * and has completed an aggregate of twenty or more years of such satisfactory service in any or all of the aforesaid services, shall upon application therefor, be granted retired pay: * * *.

" § 440j. RETIRED PAY; COMPUTATION

"Any person granted retired pay pursuant to the provisions of this title shall receive such pay at an annual rate equal to 2½ per centum of the active duty annual base and longevity pay which he would receive if serving, at the time granted such pay, on active duty in the highest grade, temporary or permanent, satisfactorily held by him during his entire period of service, multiplied by a number equal to the number of years and any fraction thereof (on the basis of three hundred and sixty days per year) * * *."

Sec. 15 of the Act of June 16, 1942, 37 U.S.C.A. § 115, upon which plaintiff relies provides, so far as here material, as follows:

"The retired pay of any officer of any of the services mentioned in the title of this Act [*Army, Navy, Marine Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service*] who served in any capacity as a member of the military or naval forces of the United States prior to November 12, 1918, hereafter retired under any provision of law, shall, unless such officer is entitled to retired pay of a higher grade, be 75 per centum of his active duty pay at the time of his retirement." [Italicized material supplied.]

Plaintiff asserts that his service fulfills all of the requirements of the above quoted provision because (1) he performed active duty as an officer in the Navy during World War I and prior to November 12, 1918, and (2) he was "hereafter retired under any provision of law," having been retired pursuant to the above quoted provisions of the Act of June 29, 1948. Also, plaintiff urges that since this provision ap-

plies to *any officer* of the Navy, the fact that he was a member of the Naval Reserve at the time of his retirement creates no bar to his recovery of the increased retired pay under the Pay Readjustment Act of June 16, 1942.

However, the defendant, relying on Berry v. United States, 107 F.Supp. 849, decided by this court on October 7, 1952, insists that section 115 of Title 37 U.S.C.A., is limited in its application solely to officers retired from the Regular Navy, and does not apply to officers retired from the Naval Reserve. Defendant further contends that even if section 115 did apply to reserve officers, the plaintiff still would not be entitled to the benefit of that statute since Congress by the enactment of Title III of the Army and Air Force Vitalization and Retirement Equalization Act of 1948, supra, under which the plaintiff retired, set up a retirement system entirely separate and distinct from that provided for the armed forces generally.

This identical question was before this court in the Berry case, supra. In that case we held that section 115 of Title 37 U.S.C.A., was not applicable to reserve officers, and the views expressed there adequately dispose of all points raised by the plaintiff with the exception of one. We therefore discuss plaintiff's contention from the premise that as originally enacted in 1942, section 115 applied only to Regular Naval officers.

The additional argument made by the plaintiff which was not presented in the Berry case is the contention that the enactment of the Career Compensation Act of 1949, 63 Stat. 802, as amended, 37 U.S.C.A. § 231 et seq., which repealed practically all provisions of the Pay Adjustment Act of 1942, supra, except that part which is now 37 U.S.C.A. § 115, shows that Congress intended section 115 to apply to Reserve as well as Regular officers. Plaintiff further points out that one of the general over-all purposes of the Career Compensation Act was to accord equal treatment to Regular and Reserve officers and that Congress by expressly excepting this section from repeal, when enacting the Career Compensation Act, intended to treat all retired officers alike who served prior to November 12, 1918.

Defendant contends that re-enacted sections of a statute are to be given the same meaning they had in the original statute unless a contrary intention is plainly manifested. Since the language of Sec. 115 remained unchanged, although excepted from repeal in the Career Compensation Act, we cannot find in the statute, as finally enacted October 12, 1949, a clear intention on the part of Congress to have Reserve officers included within the terms of Sec. 115, supra.

Following the passage of the National Security Act of 1947, 5 U.S.C.A. § 171 et seq., The Secretary of Defense established an Advisory Commission on Service Pay, which was to conduct a complete investigation and study of all financial remuneration matters relative to the members' of the armed forces. This committee, which was known as the Hook Commission, published its report in December 1948. The report contained a draft of a new pay bill for the armed services which repealed in its entirety the Pay Adjustment Act of 1942, which included section 115. H.R. 2553, which was the Hook Commission draft, was introduced in the House of Representatives. Hearings were then held which resulted in the introduction of H.R. 4591 which, while repealing practically all of the 1942 Act, did except section 115 from repeal, Sec. 533(b) (34) of H.R. 4591, 81st Cong., 1st Sess. A lengthy debate was had on the floor of the House when H.R. 4591 was offered although no final action was taken at that time. These same provisions again came before the House as H.R. 5007, 81st Cong., 1st Sess., which ultimately became the Career Compensation Act of 1949. Section 115 remained excepted from repeal as it had been in H.R. 4591.

We believe that the committee report on H.R. 4591, and the statements made on the floor of the House when that bill was

debated, clearly show an absence of any intent on the part of Congress to place a new interpretation on section 115 or to have it apply to retired pay of Reserve officers. The Armed Services Committee Report, Report No. 583, p. 4, 81st Cong., 1st Sess., submitted by Mr. Kilday, chairman of the subcommittee which conducted the hearings, stated in part as follows:

"While the committee has accepted many of the recommendations of the Hook Commission, it has not accepted them all and, in some instances, fundamental changes were made in the initial legislative draft. *Originally* the proposed act contained revisions of voluntary and involuntary retirement laws. The committee was of the opinion that the subject of voluntary and involuntary retirement was so complex, so vast, and would have such far-reaching effects upon the services that an attempt to revise or rewrite these laws should be held in abeyance until some future date, when it could be made as a separate study. * * *" [Italics supplied.]

Thus, we have a direct statement to the effect that H.R. 4591 did not seek to alter any of the existing laws relative to non-disability retirement.

This result is further supported by the remarks of Mr. Vinson, 95 Cong.Rec. 6578, during the debate on the floor of the House when H.R. 4591 was under discussion. Mr. Vinson, Chairman of the Armed Services Committee which reported the bill, stated:

"We have not followed all of the recommendations of the Hook Commission regarding retirement. The principal reason for this being that the subject of retirement is a most complicated and far-reaching matter. It is also tied up with adequate survivor benefits and the placing of all retirements on a contributory basis.

"The committee, therefore, recommends that all matters pertaining to voluntary and involuntary retirement be made the subject of a special study,

and that final action be deferred until that study is made available to the Congress."

The Hook Commission in its suggested draft, H.R. 2553, did urge certain changes in connection with all the retirement programs of the armed services, but the Congress in H.R. 4591 and in H.R. 5007, which became the Career Compensation Act, rejected such suggestions other than those pertaining to disability retirement. U.S. Code Cong.Serv., 1949, p. 2090. The retention of 37 U.S.C.A. § 115, although at the same time repealing almost in entirety the Pay Adjustment Act of 1942 is, in our opinion, another indication that Congress in enacting the Career Compensation Act did not intend to make any change in the existing statutes governing nondisability retirement.

The plaintiff points to statements by Mr. Kilday and Mr. Van Zandt, during the debates on H.R. 4591 and 5007, as supporting his position. These remarks, however, were directed at the new benefits given to the reservists under the disability retirement provisions of the bills. They could have no bearing on other retirement benefits since these bills, as pointed out above, contemplated no change in the existing nondisability retirement laws.

The Berry case, supra, held that as originally enacted 37 U.S.C.A. § 115 did not apply to Reserve officers, and we hold here that the Career Compensation Act of 1949 did not in any way alter that original intention. Re-enacted sections of a statute must be given the same meaning they had in the original statute unless a contrary intention is plainly manifested. United States v. Le Bris, 121 U.S. 278, 280, 7 S. Ct. 894, 30 L.Ed. 946. There is no such manifestation present here.

In view of our conclusion that our decision in Berry v. United States, supra, is controlling in this case, we find it unnecessary to decide whether retirement under the provisions of Title III of the Army and Air Force Vitalization and Retirement Act of 1948 requires that the retired pay

received be computed in accord with that statute and not under any other.

Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The plaintiff's petition is dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and WHITAKER, Judges, concur.