## EGAN v. UNITED STATES.

### No. 50031.

United States Court of Claims.

Decided Oct. 7, 1952.

Kees B. Gillespie, Washington, D. C., for the plaintiff.

Wilson Myers, Washington, D. C., Asst. Atty., Holmes Baldridge, Asst. Atty. Gen., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

This case is before us on motions by plaintiff and defendant for summary judgment on plaintiff's first cause of action. The question to be resolved is whether plaintiff, a veteran of World War II, is entitled under the provisions of the Act of June 10, 1948, 62 Stat. 354, 5 U.S.C.A. § 652(b) (2), amending the Lloyd-LaFollette Act of August 24, 1912, Sec. 6, 37 Stat.

539, 555, to receive salary from the Veterans' Administration for the period from November 26, 1946, to June 24, 1948, during which he was suspended and later discharged from his position as a contact representative.

The pleadings, affidavits, and exhibits filed in connection with the present motions reveal that plaintiff, despite his vigorous protests, was honorably discharged from the United States Marine Corps as a First Lieutenant on April 11, 1944, by reason of an erroneous medical diagnosis of "psychosis—unclassified." This action followed an extended period of hospitalization for mental observation which will be hereinafter described. Subsequent to his discharge plaintiff returned to his home in Waterbury, Connecticut, and through competitive examination obtained a permanent status in the classified Civil Service.

On July 5, 1945, plaintiff was employed by the Veterans' Administration office in Newington, Connecticut, as a contact representative, CAF 625–7, at $3,648 per annum, and served there until June 15, 1946, when he was transferred to the Veterans' Administration Regional Office in Hartford, Connecticut. On September 3, 1946, plaintiff received a written certificate from the manager of the Hartford Regional Office that his conduct and services for the past twelve-month period had been satisfactory.

Thereafter, on November 26, 1946, plaintiff received a letter from the manager of the Hartford office informing him that he was suspended from duty and pay, effective at the close of business on that date. The letter also contained, in accordance with the provisions of Sec. 14 of the Veterans' Preference Act of June 27, 1944, 58 Stat. 387, 390, 5 U.S.C.A. § 863, a thirty-day advance notice of proposed separation from his employment effective December 26, 1946, which was based upon four grounds. Charge I, specifications (a), (b), and (c), accused plaintiff of giving false answers on Form 57 for employment and on medical certificates in answering negatively the question, "Have you ever had a nervous breakdown?", knowing full well that he had previously suffered from a mental disability for which he had been hospitalized. In specification (a) of Charge II, plaintiff was accused of insubordination in disregarding the official procedures for submitting grievances, and in specification (b) plaintiff was charged with insubordination in refusing to submit to a physical examination. Charge III accused plaintiff of excessive absences, and Charge IV accused plaintiff of absence without leave. In addition, the letter stated that if plaintiff wished to reply to these charges, he should make a written request for a hearing within 10 days of the receipt of the letter.

Plaintiff promptly denied these charges on November 28, 1946, but was informed on December 9, 1946, that the previous action by the manager of the Hartford office had been sustained. Plaintiff thereupon launched an extensive series of appeals to the Veterans' Administration and to the Civil Service Commission. On December 13, 1946, plaintiff presented an appeal under Sec. 14 of the Veterans' Preference Act, supra, to the First Regional Office of the United States Civil Service Commission in Boston, and on December 20, 1946, plaintiff filed an appeal with the Advisory Appeal Board of the Veterans' Administration, Hartford office. On January 31, 1947, the Advisory Appeal Board entered findings that the charges were not sustained with the exception of specification (b) under Charge II, accusing plaintiff of insubordination in refusing to undergo a physical examination, and the Board recommended that plaintiff "be restored to the duty and pay status he enjoyed at the time of his separation." However, on February 13, 1947, the manager of the Hartford office informed plaintiff that he had overruled the findings and recommendation of the Advisory Appeal Board, and had sustained the charges. Plaintiff's appeal from this reversal by the manager of the Hartford office was denied by the Deputy Administrator of Veterans' Affairs in charge of the Boston office, and on June 19, 1947, as a result of plaintiff's further appeal, the Administrator of Veterans' Affairs affirmed the decision of the Deputy Administrator.

Meanwhile, on April 22, 1947, the Boston Regional Office of the Civil Service

Commission considered plaintiff's appeal of December 13, 1946, and concluded that none of the charges had been sustained except Charge II, specification (b), accusing plaintiff of refusing to submit to a physical examination. Plaintiff's restoration to pay and duty status was recommended by the Civil Service Regional Office. The Veterans' Administration was dissatisfied with this recommendation, and accordingly appealed to the Board of Appeals and Review of the Civil Service Commission in Washington, D. C. On September 30, 1947, the Board of Appeals and Review reversed the decision of the Boston Regional Office of the Civil Service Commission, finding that Charge I, specifications (b) and (c), and Charge II, specification (b), were sustained, and dismissing the remaining charges. From this decision plaintiff appealed directly to the three Commissioners of the Civil Service Commission.

While the appeal to the Commissioners of the Civil Service Commission was pending, plaintiff learned of the existence of the Board for Correction of Naval Records which had been created pursuant to Sec. 207 of the Legislative Reorganization Act of August 2, 1946, 60 Stat. 812, 837, 5 U.S. C.A. § 456a. As he was still convinced that his medical discharge from the Marine Corps on the ground of mental disability was in error and unwarranted, plaintiff applied to this Board for a hearing which was granted. From this hearing and from its investigation, the Board discovered that the following amazing circumstances had transpired in connection with plaintiff's military hospitalization and subsequent discharge.

Plaintiff had been appointed a Second Lieutenant in the United States Army, Infantry Reserve, on June 1, 1938, and had thereafter transferred to the Coast Artillery Corps Reserve. On January 6, 1941, plaintiff was called to active duty as a Captain, Coast Artillery Corps, National Guard of the United States, but on August 7, 1942, plaintiff was permitted to resign his Army commission to accept a commission as a First Lieutenant in the United States Marine Corps, effective August 26, 1942.

On February 12, 1943, while serving in Samoa, plaintiff was taken to a field hospital suffering from bronchitis. During his stay in the hospital plaintiff disarmed another patient who made a violent attempt with a dangerous weapon upon the life of the attending Naval physician. In the investigation which followed this incident, the other patients who had witnessed the encounter denied its occurrence, thus placing plaintiff's actions in an unfavorable light. Shortly thereafter, plaintiff learned that his unit was to move into combat without him whereupon he made violent protests. The medical officer then attending plaintiff became aroused by this combination of unusual events and actions, and upon discovering that plaintiff had suffered a minor head injury in October 1942, changed his diagnosis from bronchitis to a psychiatric condition, and placed him in confinement. Following this, plaintiff was returned to the United States by ship, in a locked cell, for further observation, and upon his arrival was at times confined in the insane wards of various naval hospitals, and at times was given his freedom.

During the succeeding five-month period plaintiff vehemently, and at times violently, protested the injustice of his neuropsychiatric classification, and of his confinement. Throughout the continuing examinations and technical tests to which he was subjected, plaintiff manifested no symptoms of a psychiatric condition or of any physical condition of a psychogenic origin. Rather, the sole result of his prolonged examinations was behavior symptoms which fitted equally well a sane man submitted to indignities similar to those suffered by plaintiff during his confinement. The examining medical officers, none of whom were qualified psychiatrists, chose to conclude that plaintiff was psychotic, and arranged his transfer to St. Elizabeths Hospital in Washington, D. C.

Plaintiff escaped from St. Elizabeths, but returned shortly thereafter with several medical examinations by experienced psychiatrists attesting to his sanity. Plaintiff presented this evidence to a board of psychiatrists associated with St. Elizabeths, and upon informing them that he would

bring a writ of habeas corpus if detained further, plaintiff was given his freedom.

Plaintiff next appeared before a Marine Corps Board of Medical Survey which had before it what purported to be plaintiff's Army medical records, but what in fact were the medical records of another Marine Corps officer possessing the same name as plaintiff, and who had likewise previously served in the Army. Relying upon the erroneous set of records which showed that plaintiff had been previously discharged from the Army as mentally defective, and in view of plaintiff's medical record while in the Marine Corps, the Board of Medical Survey recommended plaintiff's honorable discharge as unqualified for further active service as the result of a permanent but unclassified psychosis. Following his discharge plaintiff qualified with the Veterans' Administration to receive a pension for forty percent disability, thirty percent disability for psychoneurosis, anxiety, and ten percent disability for arthritis.

When this series of astounding errors was brought to their attention, the Board for Correction of Naval Records concluded that the diagnoses of plaintiff's mental defects were, from the beginning, "erroneous because based upon various false premises and upon insufficient facts." In order to rectify this grave injustice, the Board ordered the cancellation of plaintiff's previous discharge, and the issuance of a new honorable discharge based upon the completion of satisfactory service, thereby completely clearing plaintiff's record. This action was subsequently approved and affirmed by the Secretary of Navy.

As soon as his military record was corrected, plaintiff arranged an interview with Carl Gray, Administrator of Veterans' Affairs, to discuss the possibility of his reinstatement in the Veterans' Administration. Pursuant to the Administrator's request, plaintiff obtained and presented to him a copy of the Board's decision as well as a letter from the Secretary of Navy clearing plaintiff of the "psychiatric nature of his military discharge." The Administrator was not fully convinced by this evidence that plaintiff was qualified to resume his duties with the Veterans' Administration, and suggested that plaintiff submit to further mental examinations by three physicians whose majority report would be binding upon both parties.

Plaintiff consented to this arrangement and submitted to these examinations which resulted in a majority decision in his favor. As a result of this decision, the Administrator of Veterans' Affairs, on June 11, 1948, notified plaintiff that he was taking the following action:

"My decision, based on the majority report of the Board of three physicians and concurred in by Dr. Magnuson, is that your physical condition is such that you may be employed by the Veterans' Administration. I am going to be lenient in this case, notwithstanding the record, and to this end I am advising the Deputy Administrator at Boston that he may employ you at once in that branch area in a position in the same grade that you previously held in the Veterans' Administration, and that, if it is possible, that you be employed in the same city where you previously worked. If, perchance, you desire to be employed in the same grade in some other Veterans' Administration office in that branch area, that may be arranged upon your application to the Deputy Administrator."

On the basis of this letter plaintiff was reinstated to his former position as contact representative with the Veterans' Administration on June 24, 1948. This action eliminated the need for further consideration of plaintiff's appeal to the Commissioners of the Civil Service Commission, which, accordingly, was dismissed on June 29, 1948.

Plaintiff now seeks to recover the salary of the position held by him on and prior to November 26, 1946, for the period of his dismissal, November 26, 1946, to June 24, 1948, under the provisions of Sec. 652(b)(2), supra, contending that his dismissal by the Veterans' Administration, upon the charge of falsely concealing his mental defects on Form 57 for employment and on his medical certificates, was unwarranted and unjustified when considered in the

light of the findings of the Board for Correction of Naval Records that (1) his discharge from the Marine Corps as mentally defective was erroneous, and (2) that he was never at any time suffering from any form of psychosis or mental defect. Section 652(b) (2) relied upon by plaintiff provides:

"(b) Reinstatement or restoration to duty; compensation; deductions; veterans; removal by reduction in force

\* \* \* \* \* \*

"(2) Any person who is discharged, suspended, or furloughed without pay, under section 863 of this title, who, after answering the reasons advanced for such discharge, suspension, or furlough or after an appeal to the Civil Service Commission, as provided under such section, is reinstated or restored to duty on the ground that such discharge, suspension, or furlough was unjustified or unwarranted, shall be paid compensation at the rate received on the date of such discharge, suspension, or furlough for the period for which he received no compensation with respect to the position from which he was discharged, suspended, or furloughed, less any amounts earned by him through other employment during such period, and shall for all purposes except the accumulation of leave be deemed to have rendered service during such period."

Defendant admits the facts in the case but insists that in order for a discharged employee upon reinstatement to be entitled to receive back pay under the provisions of Sec. 652(b) (2), there must be a formal finding or determination that his removal was unjustified and unwarranted, and that since the decision of the Administrator of Veterans' Affairs, quoted above, directing plaintiff's reinstatement contains no such formal finding, the plaintiff cannot recover.

Defendant previously asserted this same argument in a similar case, Mendez v. United States, 96 F.Supp. 326, 327, 119 Ct. Cl. 345, 349. The court there rejected this contention, being of the opinion that:

"\* \* \* The purpose of the statute in question was to protect classified Civil Service employees from loss of pay if, upon the final decision on appeal on the charges preferred, it should be found that the grounds upon which such employee was suspended were not justified or warranted. This is but another way of saying that the employee should receive the pay of his position during the period of his suspension if it should be found, upon appeal, that the grounds upon which he was suspended did not exist. \* \* \*"

From this, the court concluded that it is the "substance and effect" of the decision ordering the reinstatement of the suspended or discharged employee which controls the right to receive pay under Sec. 652(b) (1) and (2), irrespective of whether or not the terms "unwarranted or unjustified" are actually used therein.

All of the charges upon which plaintiff in the instant case was discharged were demonstrated upon appeal to have been unjustified. Most of the charges against plaintiff were dismissed by the Board of Appeals and Review of the Civil Service Commission on the ground that "in view of all the facts and circumstances involved in these charges the action of the Manager of the Hartford office *was not warranted.*" [Emphasis added.] The basis for the remaining and principal charge against plaintiff of falsely representing the existence of previous mental disabilities was rendered nonexistent, and thus wholly unwarranted, by the discovery and revelation of the truth with respect to plaintiff's mental condition while in the Armed Forces. Hence, it is clear that, despite the actual language used, the "substance and effect" of the decision of the Administrator of Veterans' Affairs directing plaintiff's reinstatement following the clarification and correction of his military medical records, was that plaintiff's suspension and dismissal from duty and pay had been neither justified nor warranted. Plaintiff was acquitted and absolved of the charges which had been made against him. We therefore conclude that plaintiff is entitled to receive compensation under Sec. 652(b) (2).

Defendant further insists, however, that plaintiff's military medical records afforded

reasonable cause for his removal at the time this action was taken, and the fact that plaintiff's medical records were subsequently corrected, thereby destroying such cause, does not entitle plaintiff to receive his back pay under Sec. 652(b) (2). Defendant urges that Ginn v. United States, 110 Ct.Cl. 637, sustains this contention.

In the Ginn case it was held that where a federal employee is suspended upon reasonable cause, as distinguished from an arbitrary suspension, and where he is afforded proper and regular procedure, the suspended employee is not entitled to compensation for the period of suspension when it is subsequently determined that the cause for which he was suspended was insufficient or nonexistent.[1] It is significant, however, that the Ginn decision was based upon the provisions of the Lloyd-LaFollette Act of August 24, 1912, supra, prior to its amendments by the Act of June 10, 1948, supra, to provide for the payment of compensation for the period of unwarranted removal. Following the 1948 amendment to the Lloyd-LaFollette Act, the entire problem of the unwarranted removal of federal employees for unsufficient cause was reconsidered in Lezin v. United States, 98 F.Supp. 574, 120 Ct.Cl. 724. A majority of the court there concluded that, by virtue of the provisions of the 1948 amendment establishing the right to back pay, the rule expressed in the Ginn decision was no longer applicable to *classified* Civil Service employees suspended or removed for a cause subsequently found to be insufficient.[2]

It is thus apparent that in accordance with our decision in Lezin v. United States, supra, we must also reject defendant's second contention. Plaintiff satisfies the requirements necessary to receive the benefits provided by Congress in Sec. 652(b) (2),

as he is a veteran entitled to the protection of Sec. 863 of Title 5, supra, possesses a classified Civil Service Status, and was subjected to an unjustified and unwarranted suspension and discharge from pay and duty. The fact that his dismissal occurred prior to the amendment of the Lloyd-La-Follette Act does not bar plaintiff's recovery because his restoration to duty took place *after* the passage of the 1948 amendment. Jackson v. United States, 121 Ct.Cl. 405.

Plaintiff received no compensation from other employment during this period, and, accordingly, he may recover the full amount of salary due him for the period from November 26, 1946, to June 24, 1948. However, the Government may offset against this amount that portion of the pension payments received by plaintiff from the Veterans' Administration for his purported "psychoneurosis" disability. Plaintiff's eligibility for this pension was predicated by the Veterans' Administration upon the same facts and circumstances as his discharge from the Marine Corps, and when these facts and circumstances were subsequently found to be erroneous and were corrected to show that plaintiff had never suffered from a mental disability, plaintiff's eligibility was destroyed. Hence, plaintiff may not now retain pension payments for a disability which never in fact existed.

Plaintiff's motion for summary judgment on his first cause of action is granted, and defendant's motion for summary judgment is denied. The entry of judgment is suspended pending the filing of a computation by the General Accounting Office showing the net amount due plaintiff. It is so ordered.

JONES, C. J., and HOWELL, MADDEN and WHITAKER, J., concur.

---

1. A federal employee may be dismissed by the head of a Department for the good of the service upon reasonable cause, and the findings of the Department Head are not subject to review by this court in pay cases except where there has been a procedural defect or where there is clear proof of arbitrary or capricious action. Croghan v. United States, 89 F.Supp.

1002, 116 Ct.Cl. 577; Bryant v. United States, 122 Ct.Cl. 460.

2. It has since been determined in Brown v. United States, 122 Ct.Cl. 361, that the principle enunciated in the Ginn case is still applicable to *nonclassified and excepted schedule* Civil Service employees who are not included within the scope of § 652(b) (1) and (2).