John J. EGAN

v.

UNITED STATES.

No. 50031.

United States Court of Claims.

Jan. 15, 1958.

As Amended April 2, 1958.

378

Rees B. Gillespie, Washington, D. C., for plaintiff.

Frances L. Nunn, Washington, D. C., with whom were Asst. Atty. Gen. George Cochran Daub and Acting Asst. Atty. Gen. George S. Leonard, for defendant.

LITTLETON, Judge.

This case is before the court on plaintiff's and defendant's motions for summary judgment under the second count of plaintiff's amended petition.[1]

This is an unusual case of mistaken identity and almost incredible negligence, as a result of which plaintiff, an officer in the United States Marine Corps Reserve, was denied his promotion to captain on March 1, 1943, was illegally and errone-

1. In Egan v. United States, 107 F.Supp. 564, 123 Ct.Cl. 460, amended in part by Egan v. United States, 112 F.Supp. 958, 123 Ct.Cl. 472, the court rendered judgment for plaintiff on his first count involving a claim for salary from the Veterans' Administration to which plaintiff was entitled during a period of wrongful suspension and discharge from his civilian position in that agency.

ously released to inactive duty on October 28, 1943, and was illegally discharged from the Marine Corps Reserve on April 11, 1944. Plaintiff sues to recover the active duty pay and allowances which he claims were due him and were wrongfully withheld from the date of his promotion to captain on March 1, 1943, to April 7, 1948, when plaintiff was finally given a legal and valid honorable discharge from the Marine Corps.

The present case is one in which a rather full statement of the facts and a discussion of the issues are necessary to a proper understanding of the case.

Plaintiff had been appointed a second lieutenant in the United States Army, Infantry Reserve, on June 1, 1938, and had thereafter transferred to the Coast Artillery Corps Reserve. On January 6, 1941, plaintiff was called to extended active duty and served thereon as a captain, Coast Artillery Corps, National Guard of the United States. On August 7, 1942 plaintiff was permitted to resign his Army commission as captain to accept a commission as a first lieutenant in the United States Marine Corps Reserve, effective August 26, 1942. Plaintiff was called to active duty in the Marine Corps on September 18, 1942.

While serving overseas in Samoa, plaintiff, on February 12, 1943, was taken to a field hospital for treatment for an attack of bronchitis. Shortly after his admission to the hospital for treatment, another patient in plaintiff's ward made a violent attempt with a dangerous weapon upon the life of a Naval physician. Plaintiff, who was not seriously ill, intervened and disarmed the violent patient. In the course of an investigation following that incident, the witnesses to what happened, who were patients in the hospital at the time, denied that anything of the sort had occurred. It was later fully established that these witnesses lied. Plaintiff was also questioned by hospital doctors concerning two previous injuries which he had mentioned but which were not noted on his hospital medical record. Plaintiff had actually suffered the two injuries, had been treated for them by Army doctors, and had reported the injuries to the admitting physician of the hospital but, unaccountably, no record was made of this matter. The investigating physicians in the hospital made up their minds that plaintiff had imagined the ward encounter with the violent hospital patient and had also imagined the two injuries he claimed to have incurred. At about this time, plaintiff learned that his battalion had been ordered into combat. Plaintiff had recovered completely from the attack of bronchitis and asked to be discharged from the hospital to permit him to join his battalion. Hospital authorities refused to discharge plaintiff and his reaction was, naturally enough, quite violent. On February 17, 1943, the hospital physicians erroneously diagnosed plaintiff as insane and he was confined to the locked ward of the hospital.

On March 1, 1943, while plaintiff was in the locked ward under an improper diagnosis of insanity, he was given a temporary appointment as captain, subject to conditions and procedure specified in ALNAV 142 in part as follows:

" * * * upon receipt notification of appointment in any form commanding officer direct appointee report for examination by at least one medical officer to determine physical fitness to perform duties of the rank to which appointed. Submit completed form yoke to Bureau of Naval Personnel with notation thereon 'for temporary promotion or appointment as appropriate', making reference to appointment authority. If physical defects of a Naval reserve officer have been waived previously by the Department and upon physical examination for temporary promotion are found to be essentially the same, such defects will not be considered disqualifying. If found physically qualified and if in opinion commanding officer appointee is mentally, morally, and professionally qualified and not involved disciplinary action, appointee will be informed of his appointment. By law

the appointee is then entitled to the pay and allowances of the grade or rank to which appointed from the date on which his appointment was made by the President and the appointment, unless expressly declined, shall be regarded for all purposes as having been accepted on the date made. Date of rank is for precedence only and is not controlling factor for pay purposes. Formal acceptance and oath of office not required by law. * * * Physical examination waived in event no medical officer available within one month to conduct physical examination. In this event advise Bureau of Naval Personnel of circumstance. Bureau of Naval Personnel will be informed of appointments withheld stating reasons therefor. * * * "

Plaintiff's appointment as captain, effective March 1, 1943, with rank from February 28, 1943, was illegally withheld for the stated reason, which was erroneous, that "he was sick in the U. S. Naval Hospital." [2] There is no indication that the promotion was withheld for any reason other than that plaintiff was then in the hospital and confined to a locked ward under an erroneous diagnosis of insanity. His previous attack of bronchitis was not a factor in this. Under the conditions prescribed in ALNAV 142, plaintiff was, in the circumstances, erroneously and illegally deemed neither physically nor mentally qualified to accept the appointment. Plaintiff was in fact neither ill nor insane.

On March 15, 1943, plaintiff was transferred from the locked ward of the naval hospital in Samoa to the locked ward of a ship, the U. S. S. Wright, and transported back to the United States. On March 28, 1943, plaintiff was transferred to the locked ward of the U. S. Naval Hospital, Mare Island, California. On May 28, 1943, plaintiff was released from the Naval Hospital at Mare Island and ordered to proceed, *without escort,* to the Naval Medical Center, Bethesda, Mary-

land. Upon his arrival in Bethesda on June 7, 1943, plaintiff was placed in the locked ward of that hospital. On June 17, 1943, plaintiff was transferred to Saint Elizabeths Hospital for the Insane, Washington, D. C.

During the five months of plaintiff's confinements in locked wards as an insane person, he attempted in every conceivable way to persuade the medical officers that he was not insane. His growing sense of frustration and his occasionally vehement protests only served to confirm the medical authorities in their opinion that plaintiff was insane. Throughout plaintiff's confinements no technical tests administered to him by doctors resulted in the manifestation of any symptom of a psychiatric origin, or of any physical condition of a psychogenic origin.

Not long after plaintiff's admission to Saint Elizabeths Hospital, he escaped and later returned armed with reports of several medical examinations attesting to his sanity. Plaintiff then appeared before a group of psychiatrists at Saint Elizabeths and told them that if he was held at the hospital he would seek a writ of habeas corpus. He was finally permitted to leave the hospital on October 30, 1943.

In the meantime, on July 30, 1943, a Board of Medical Survey convened at Saint Elizabeths Hospital and rendered a report which contained the following statement of so-called *facts:*

"On admission to this hospital the patient was obviously making an effort to be as pleasant as possible but failed to conceal very definite tension, speaking very rapidly and lighting one cigarette from the other. He was intent upon establishing that he had no mental disorder and that he had been mistreated. He presented his case with considerable circumstantiality and detail, and made an especial effort to smooth over his past behavior diffi-

2. Letter, dated January 31, 1945, from F. L. Churchville, Captain, U. S. Marine

Corps, Headquarters, Washington, D. C., "To whom it May Concern:".

culties, giving explanatory and personal versions *of a paranoid nature.*[3] Since then he has shown improvement. He is still however, preoccupied with explaining his psychiatric difficulties on the basis of errors on the part of the physicians, who have handled his case. He needs further hospital care. His physical condition is good.

"*Verified history reveals* that this patient was discharged from the U. S. Army on March 3, 1942, because of a mental illness diagnosed, 'Psychoneurosis, Anxiety, Neurosis, with Schizoid Features.' In the opinion of this Board the origin of the patient's present disability existed prior to appointment and has not been aggravated by service conditions."
[Italics supplied.]

The "verified history" reported in the statement of facts of the Board of Medical Survey was the service and medical history of *another* John J. Egan, not this plaintiff, who had indeed been discharged from the Army on March 3, 1942 as an insane person. Despite the asserted verification referred to, this other Egan had a service serial number different from the serial number of plaintiff, and his discharge from the Army antedated plaintiff's by several months. This astounding piece of misinformation and carelessness was transmitted to the Board of Medical Survey by the Adjutant General of the Army through the Bureau of Medicine and Surgery.

On the basis of the remarkable and untrue findings of fact quoted above, the Board of Medical Survey, without further inquiry into the matter, recommended that plaintiff appear before a United States Marine Corps Retiring Board "in order that his best interests be fully protected", inasmuch as he was deemed to be permanently "unfit for service" by reason of an unclassified psychosis which had existed prior to his Marine Corps service and had not been aggravated by such service.

On September 24, 1943, a Marine Corps Retiring Board was convened pursuant to the incorrect and erroneous recommendation of the Board of Medical Survey. On October 25, 1943, the Commandant of the Marine Corps notified plaintiff that as of October 28, 1943, he would be relieved from active duty and be assigned to the Third Reserve District; that upon his discharge from treatment at Saint Elizabeths Hospital, he should proceed to his home in Connecticut. On October 28, 1943, plaintiff was relieved from active duty and his pay and allowances were discontinued. On October 30, 1943, plaintiff was discharged from treatment at Saint Elizabeths Hospital.

On November 27, 1943, plaintiff was advised by the Commandant of the Marine Corps that:

"In view of the recommendation of the Board of Medical Survey convened in your case, which was approved by the Chief of the Bureau of Medicine and Surgery, it is the intention of the Commandant, U. S. Marine Corps, to recommend to the proper authority that you be discharged as an officer of the Marine Corps Reserve."

Plaintiff was advised that he might make such statement as he might desire pursuant to Art. 13–111(9) Marine Corps Manual. That regulation provides as follows:

"Discharge of Officers
\*        \*        \*        \*        \*
"(9) An officer will be afforded a reasonable time, prior to discharge, to submit to the Secretary of the Navy, via official channels, any statement he may desire to make; which opportunity will be considered as having been afforded through the mailing of notice to his official address."

It does not appear from the record on what date the Retiring Board, convened on September 24, 1943, made its findings

3. It is interesting to note in this connection that plaintiff's personal versions of

what had happened turned out to be the correct versions.

and conclusions, but on November 30, 1943, those findings were approved by the President and they concluded that (1) plaintiff was incapacitated for active service by reason of psychosis unclassified, (2) that plaintiff's incapacity had existed prior to September 18, 1942, when plaintiff was assigned to active duty in the Marine Corps, (3) that the incapacity was permanent, not the result of an incident of plaintiff's service in the Marine Corps, and not the result of his own misconduct.

On December 5, 1943, plaintiff submitted a statement protesting the proposed discharge from the Marine Corps Reserve. On December 11, 1943, the Commandant of the Marine Corps wrote to plaintiff advising him of the above noted findings of the Naval Retiring Board; that the findings had been reviewed by the Bureau of Medicine and Surgery, by the office of the Commandant of the Marine Corps, and by the Judge Advocate General of the Navy prior to submission to the President for final action which was taken on November 30, 1943. The letter then stated:

"3. In view of the above, it is impracticable to grant the request contained in reference (b) [plaintiff's letter of December 5, 1943]. Therefore, final steps are now being taken to effect your discharge as outlined in reference (a) [letter to Egan, dated November 27, 1943, from the Commandant stating that his discharge from the Reserves was being recommended] and reference (b) will be made a part of your official record at this Headquarters and considered as your statement relative to discharge."

On April 11, 1944, the plaintiff was notified by the Commandant of the Marine Corps, that effective that date, he was, by direction of the President, discharged from the Marine Corps Reserve under honorable conditions, having been found not physically qualified for active duty. On the same date the Secretary of the Navy issued to plaintiff a Certificate of Satisfactory Service.

Thereafter, plaintiff applied to the Naval Retiring Review Board, and, on March 10, 1945, that Board notified plaintiff that "after careful consideration and review of all records" [including the erroneous army records of the other Egan], it had been unanimously decided that there was no reason to reverse the findings and decision of the Naval Retiring Board in any particular; that those findings and the decision had been affirmed, and that the President had, on February 28, 1945, approved the decision of the Naval Retiring Review Board. In view of the true facts which could and should have been easily ascertained by the medical and administrative officials of the service, we conclude that a more unjust and outrageous record against plaintiff could not have been compiled.

In the meantime, plaintiff, a perfectly healthy and normal man, had, on December 13, 1943, secured employment in the Office of Price Administration in Hartford, Connecticut, and was employed thereafter in that and other civilian positions, including his employment with the Veterans' Administration which was involved in plaintiff's claim in the first count of his petition.[4] After hearing about the creation by Congress of the Board for the Correction of Naval Records, under section 207 of the Legislative Reorganization Act of 1946 (60 Stat. 837), plaintiff, on December 27, 1947, applied to that Board to correct the errors and injustices resulting from the erroneous and careless medical diagnosis of his physical condition by the Navy, and the consequent erroneous and illegal discharge of plaintiff as unqualified for active service by reason of permanent psychosis. Following diligent efforts by plaintiff and a long investigation and an oral hearing, the Board on March 17, 1948, made findings of fact, conclusions and a decision. The Correction Board

---

4. At the time of his Correction Board hearing in 1948, plaintiff had been discharged from three positions when his employers discovered that he had been confined in mental institutions.

concluded that plaintiff had at no time been mentally defective, nor had he ever suffered from any incapacity, physical or mental, which would have prevented him from performing active duty as an officer in the Marine Corps; that the many diagnoses of insanity rendered by the various medical officers and boards were all completely in error and had been based on numerous false premises, including the mistaken reports from Samoa that plaintiff had imagined two minor injuries prior to his hospitalization for bronchitis in Samoa, and that he had also imagined the encounter with the violent patient in the medical ward in the hospital in Samoa. The Board found that plaintiff's accounts of those incidents, consistently disbelieved by the Naval physicians and officials, had been completely accurate. The Board also found that the Adjutant General of the Army and the Bureau of Medicine and Surgery of the Marine Corps had confused plaintiff's Army records with the Army records of another former Army officer whose name was "Egan"; that on the basis of the Army medical records of the other Egan, Marine Corps officials were convinced that plaintiff had been found insane while serving in the Army and had been discharged from the Army as an insane person prior to his entry into the Marine Corps. In its decision, the Correction Board, after having carefully considered the true facts, concluded that plaintiff had never been insane; that all diagnoses of insanity had been negligently made and in error, that plaintiff had at all times been mentally and physically capable of performing active service as an officer in the Marine Corps; that the discharge in 1944 of plaintiff because of mental incapacity for service was clearly erroneous and should be changed to an honorable discharge without any reference therein to such nonexistent incapacity. The Commandant of the Marine Corps was ordered to cancel the previous illegal discharge and to issue to plaintiff a new honorable discharge in substitution therefor without any reference to physical or mental incapacity, together with a Certificate of Satisfactory Service. The Chief of the Bureau of Medicine and Surgery was directed by the Correction Board to add to plaintiff's medical records a certified copy of the Board's conclusion and decision as the last and final official entry in plaintiff's medical records. The decision of the Board was approved in every respect by the Secretary of the Navy on March 17, 1948.

Pursuant to the above decision of the Correction Board, the Commandant of the Marine Corps issued orders dated April 7, 1948, cancelling plaintiff's erroneous discharge of April 11, 1944, and substituting therefor an honorable discharge without reference to physical disqualification. The new discharge, however, was for some unknown reason made effective retroactively back to the date of the original void discharge, i. e., April 11, 1944. The Certificate of Satisfactory Service issued to plaintiff on April 11, 1944, remained in effect.

On February 12, 1951, plaintiff filed his petition in the instant case claiming, in the second count, on the facts hereinbefore recited, that he was entitled to recover (1) the difference between the active duty pay of a captain and that of a first lieutenant from March 1, 1943, the date on which his promotion to captain was illegally withheld on the ground that he was insane, to October 28, 1943, the date on which he was illegally released to inactive duty; (2) the active duty pay and allowances of a captain from October 28, 1943 to April 7, 1948, the date on which his illegal and erroneous discharge for physical incapacity was vacated and a new honorable discharge was issued. The theory of plaintiff's claim is that since the repeated diagnoses of insanity were ultimately found to have been completely in error and without any justification whatsoever, all official actions adverse to plaintiff which were taken on the basis of such erroneous diagnoses were illegal and void and he is entitled, as a matter of law to receive the pay and allowances which he would have received had the erroneous diagnosis not been made and the consequent illegal actions not been taken. The adverse actions tak-

en on the basis of the erroneous diagnosis of insanity were, the withholding of plaintiff's commission of captain on March 1, 1943, his release to inactive duty on October 28, 1943, and his discharge from his Reserve component on April 11, 1944.

At the time in 1948 when the Correction Board ordered that plaintiff's records be corrected, and also at the time of the filing of plaintiff's petition in this court on February 12, 1951, section 207 of the Legislative Reorganization Act of 1946 (60 Stat. 812) did not contain authority later enacted, for the administrative payment of claims of persons for losses of pay, etc., due as a result of the correction of military records. On October 25, 1951, Congress enacted Public Law 220 (65 Stat. 655) * amending section 207 of the Act of August 2, 1946, *supra*, to authorize such administrative payment of claims for lost pay. The new statute provided in subparagraph (b) as follows:

"(b) The Department concerned is authorized to pay, out of applicable current appropriations, claims of any persons * * * for losses of pay (including retired or retirement pay), allowances, compensation, emoluments, or other monetary benefits, as the case may be, which are found to be due on account of military or naval service *as the result of the action heretofore taken pursuant to section 207 of the Legislative Reorganization Act of 1946*, or hereafter taken ·pursuant to subsection (a) of this section: * * *" [Italics supplied.]

Although plaintiff's claim for lost pay was pending in this court, plaintiff, on March 23, 1955, filed an application with the Board for the Correction of Naval Records seeking the administrative payment of "the amount due me on account of correction of record" and setting forth the amounts claimed to be due in the

same manner as in count II of his petition pending in this court.

Navy Department regulations [5] covering the application for payment and the settlement of claims under section 207 of the 1946 Act as amended provide in part as follows:

"2. *Application for Settlement*

"(a) Settlement and payment of claims shall be made *only upon a claim of the person whose record has been corrected* or of his legal representative, his heirs at law, or his beneficiaries. Such claim for settlement and payment may be filed as a separate part of the application for correction of the record.

* * * * *

"3. *Settlement*

"(a) Settlement of claims shall be upon the basis of the decision and recommendations of the Board, as approved by the Secretary of the Navy. Computation of the amounts due shall be made by the appropriate disbursing activity. *In no case will the amount found due exceed the amount which would otherwise have been paid or have become due under applicable laws had no error or injustice occurred. * * *"* [Italics supplied.]

On March 14, 1956, the Executive Secretary of the Board for the Correction of Naval Records wrote to plaintiff advising him that the Secretary of the Navy had approved the decision of the Board denying plaintiff's application, as follows:

"Decision:

"It is the decision of this Board that no change, correction or modification of Petitioner's naval record is warranted.

"Recommendation:

"In order that previous corrective action taken by the Board may not be nullified and in order to avoid any

---

* Now 10 U.S.C.A. § 1552.

5. NAVEXOS P–473 (9–29–52, revised 6–7–55), issued pursuant to section 207 of the Legislative Reorganization Act of 1946, as amended.

additional injustice, it is recommended that the Board's record of proceedings in this case together with all related papers and any reference thereto which might· otherwise appear in his naval records, be returned to the Board for inclusion in its confidential file."

A reading of the above quoted "Decision" reveals that it is, to say the least, unresponsive to the application for administrative settlement of the *claim for active duty pay* filed by plaintiff, and appears rather to have been rendered on the mistaken assumption that plaintiff was seeking a further correction of his naval records. Plaintiff needed no further correction of records. Plaintiff's application for the administrative payment and settlement of his claim is before this court, and it in no sense requests a further correction of his naval records. Inasmuch as the above quoted decision amounted to an administrative denial on March 14, 1956, of his claim for back pay, etc., plaintiff, on December 5, 1956, amended count II of his petition here alleging that the denial by the Navy Department of his claim for compensation was arbitrary and capricious.

On March 21, 1957, plaintiff moved for summary judgment under count II of his amended petition asserting that there as no genuine issue as to any material fact and that as a matter of law plaintiff was entitled to judgment for pay lost and due to him as the result of the corrective action taken pursuant to the provisions of section 207 of the 1946 Act, *supra.*

Defendant has filed a cross motion for summary judgment contending that on the undisputed facts plaintiff is not entitled to any pay whatsoever because the correction of his record in 1948 did not have the effect of restoring plaintiff to active duty or of altering the fact that he had been effectively relieved from active duty in the Marine Corps on October 28, 1943, and effectively discharged from the Marine Corps Reserve by an antedated discharge on April 11, 1944. Defend-

ant further contends that in any event plaintiff is not entitled to recover the pay and allowances of a captain since he was never actually promoted in the usual way to that grade and rank.

Passing for the moment the question of whether or not plaintiff's promotion to captain was improperly and illegally withheld in 1943, we consider first the question of whether plaintiff is entitled to recover any active duty pay and allowances from the time of his erroneous relief from active duty on October 28, 1943, to April 7, 1948, the date on which his naval records were corrected. Plaintiff's active duty pay and allowances were discontinued on the date of his release from active duty on October 28, 1943, several months prior to his first discharge from the Marine Corps Reserve on April 11, 1944.

Plaintiff's release from active duty on October 28, 1943, and his discharge from the Marine Corps Reserve on April 11, 1944, were both actions taken on the basis of the erroneous and entirely unjustified findings of the Board of Medical Survey (July 30, 1943) and of the Marine Corps Retiring Board (September 24, 1943) to the general effect that plaintiff had been insane before his entry on active duty in the Marine Corps and was insane in 1943 and therefore incapable of performing active duty. In 1948, the Board for the Correction of Naval Records, with the approval of the Secretary of the Navy, positively found that at no time, before or during his Marine Corps service, had plaintiff been insane or incapable of performing active duty. The Board found that plaintiff at all times had been physically and mentally capable of performing active duty as a commissioned officer in the Marine Corps; that the findings of the Board of Medical Survey, the Marine Corps Retiring Board and the boards which had reviewed those findings, had all been in error and unjust to plaintiff as had been his discharge in April 1944. The Board ordered that plaintiff's records be corrected in accordance with such findings, and they were so corrected.

We are of the opinion that as a result of the action of the Correction Board and the Secretary of the Navy, not only was plaintiff's 1944 discharge from the Marine Corps Reserve rendered void, but also his release from active duty in October 1943 was illegal and void. While, as noted by defendant, the Secretary of the Navy has authority in a proper case to release any member of the naval service from active service in time of war or of peace, if the orders accomplishing that release are in some manner invalid, the person as a matter of law continues in an active duty status. Berry v. United States, 107 F.Supp. 849, 123 Ct.Cl. 530; Register v. United States, 128 F. Supp. 750, 131 Ct.Cl. 98. In the instant case plaintiff's release from active duty was based on the erroneous and wholly unjustified findings of insanity made by the Board of Medical Survey and the Marine Corps Retiring Board and such release from active duty on that ground was therefore improper and illegal. As a matter of law plaintiff continued in an active duty status until validly discharged from the Marine Corps and this did not occur at least until April 7, 1948, the date on which the Commandant of the Marine Corps purported to cancel plaintiff's prior void discharge and issue him a new honorable discharge in accordance with the order of the Correction Board.

Defendant contends, however, that the plaintiff was validly discharged on April 11, 1944 under the order of April 7, 1948 making the new discharge effective retroactively to the date of the original invalid discharge, and that in any event the 1948 correction of plaintiff's records did not entitle plaintiff to recover any active duty pay because he was not restored to active duty. We do not agree with either contention. With respect to the dating back of the new discharge, we find that the decision and order of the Correction Board did not specify, even if it could have under the circumstances, that the new discharge be made effective retroactively to the April 1944 date of the original discharge, and

we are of the opinion that the action of the Marine Corps in so doing was unauthorized and contrary to the spirit and intent of the corrective action ordered by the Secretary of the Navy through his correction board, and, also, contrary to the intent and purpose of the law in this case. Furthermore, plaintiff's right to recover the pay or compensation lost because of an unjust and illegal discharge is not dependent upon the officer's reappointment to the rank, grade or office to which the pay or compensation claimed was attached, either under the decisions of this court or the provisions of the 1951 amendment to the Correction Board statute.

A situation somewhat similar to that in the instant case arose in the case of Boruski v. United States, Ct.Cl., 155 F. Supp. 320. Boruski, an Army officer, was dishonorably discharged from the Army following his conviction and sentencing by court martial for manslaughter. Following a review of his case several years later, Boruski's sentence was vacated and it was ordered that he be granted an honorable discharge in substitution for his previous dishonorable discharge. As in the instant case, Boruski's new discharge was made effective retroactively back to the date of his original invalid discharge and the Army refused to give him any pay for the period between the two discharges. Defendant contended in that case that Boruski was not entitled to recover any pay because, rightly or wrongly, he had been completely dismissed from the Army and from his commission on July 23, 1945, and since that time had not been the legal holder of any commissioned rank in the Army. Defendant also relied on the fact that although the court martial sentence had been vacated, Boruski was not reappointed to any commissioned office. The court held that the action of the Judge Advocate General in vacating the dishonorable discharge and substituting therefor the honorable discharge, made the original discharge in 1945 void and of no effect so that Boruski's purported dismissal from the service had been illegal and ineffective, with the necessary result that Boruski "was

never dismissed from the service, at least not until the date of the Judge Advocate General's decision" in 1951. The court also held that the back-dating of the discharge was an administrative narrowing of the corrective determination of the Judge Advocate General, not warranted by the decision of the Judge Advocate. Boruski was held entitled to recover active duty pay and allowances including accrued leave, and any emoluments which might be presently due him under the G. I. Bill of Rights.

In the case of Shapiro v. United States, 69 F.Supp. 205, 107 Ct.Cl. 650, Shapiro, a lieutenant in the Army, was convicted by court martial and sentenced to be dismissed from the service on September 3, 1943. On January 9, 1944, Shapiro was dismissed, and on September 8, 1944, he was reinducted as a private. On March 8, 1945, Shapiro was discharged from the Army for physical disability. In his suit in this court, Shapiro sought to recover the active duty pay of a lieutenant, less his pay as a private, from January 9, 1944 to March 8, 1945. There had been no correction board action in that case, since the correction board legislation had not been enacted at that time. Shapiro was not in the Army at all from January 9, 1944 to September 8, 1944, and at no time after January 9, 1944, did he hold commissioned rank in the Army. The court held that the court martial had acted so arbitrarily in Shapiro's case as to lose jurisdiction before it rendered its sentence and that the sentence was therefore null and void. The court concluded that because Shapiro's resulting discharge was illegal, he did not lose any rights to the emoluments of his office of lieutenant and that the court had jurisdiction to render judgment for any amounts he could prove he would have received had he not been wrongfully discharged on January 9, 1944, up to the time of his valid discharge for physical disability.

As noted herein, entitlement to recover pay lost because of an error, injustice, or illegal action, later corrected, is not, under the provisions of section 207 (b) of the 1951 amendment to the 1946 Act, dependent upon reappointment of the applicant to the rank, grade or office to which the pay claimed was attached. We are of the opinion that section 207(d) of the 1951 amendment makes it quite clear that such payment may be made to former service personnel who, during the period covered by the payment claimed, were in a civilian status. The payment authorized by section 207 (b) is not for services actually performed on active duty, but rather for services which would have been performed had the error and injustice corrected by the Board not occurred.

In cases involving suits for civil service or military pay arising under acts of Congress or regulations of the executive departments, where the court has found that the claimant has been illegally deprived of the status or rank to which the pay claimed attached, lack of such status or rank during the period involved has never been held a bar to recovery of the pay lost.

Both parties have referred to cases heretofore considered by this court involving claims for disability retired pay where, long after an officer had been released to inactive duty and discharged without disability retirement status and pay, a reviewing board ultimately held that he was disabled at the time of his release and entitled to disability retirement with pay but only from the date of the reviewing board action. In those cases the court has held that the disabled officers were entitled to pay from the date of their improper release to inactive duty or complete separation from the service, not because the ultimate reviewing board specifically required such retroactive action, but rather because only by so doing would the officers receive their full statutory rights. Updike v. United States, 132 F.Supp. 957, 132 Ct. Cl. 627; Womer v. United States, 84 F. Supp. 651, 114 Ct.Cl. 415.

In the instant case the back-dating of the discharge was not authorized under the facts and the law and it served to dilute the corrective measures called for

by the findings and decision of the Correction Board. Furthermore, since plaintiff was *not* incapacitated to perform active duty on April 11, 1944, and no other basis for discharging him existed, his discharge on that date, whether by the orders issued at that time or under the orders issued in 1948, was illegal and void. Under the laws applicable to the Naval Reserve, an officer in the Reserve cannot be discharged therefrom either in time of war or peace at the whim of the Secretary of the Navy, but only under certain specific conditions, none of which existed in this case. Whether plaintiff was validly discharged on April 7, 1948, has not been put in issue by plaintiff. We are of the opinion that plaintiff was not and could not have been, under the peculiar facts of this case, validly discharged on April 10, 1944.

█ From the above, it follows that plaintiff is entitled to recover active duty pay from October 28, 1943 to April 7, 1948, as claimed in his petition.

█ There remains for consideration the question of whether the withholding of plaintiff's promotion to captain was illegal in the circumstances of this case so that his active duty pay from the effective date of his promotion should have been that of a captain.

As noted in our earlier statement of facts, plaintiff was diagnosed as insane on February 17, 1943 and was transferred to the locked ward of the Marine Corps hospital in Samoa. By that time plaintiff had apparently fully recovered from the attack of bronchitis. On March 1, 1943, while plaintiff was in the locked ward of the hospital under an erroneous diagnosis of insanity, he was given a temporary promotion to the rank of captain, subject to the conditions and procedures specified in Navy regulations set forth in part earlier herein. Under those regulations, plaintiff's promotion could be withheld if he was physically or mentally not fit to perform the duties of the rank to which appointed on the effective date of the promotion. According to an official statement of the Marine Corps, dated January 31, 1945, plaintiff's promotion of March 1, 1943, was withheld because he was "sick in the U. S. Naval Hospital." The only "sickness" from which plaintiff was supposed to be suffering at the time of his promotion, was the sickness of insanity. It is therefore obvious that plaintiff's promotion to the rank of captain was withheld because the Marine Corps deemed him physically and mentally unfit to perform the duties of the rank of captain by reason of insanity. Inasmuch as the Correction Board and the Secretary of the Navy later found that plaintiff was not then insane and had no other illness during his active service which would have rendered him unfit to perform the duties of an officer on active duty, the basis on which the promotion of March 1, 1943 was withheld was nonexistent and, as a matter of law such withholding was illegal. Plaintiff's appointment to the rank of captain legally became effective on March 1, 1943 in accordance with the order of the Secretary of the Navy. Except for the negligent diagnosis of insanity made by unqualified medical personnel and without the aid of recognized tests, plaintiff would have received his promotion when it was issued on March 1, 1943.

In the case of Boruski v. United States, *supra*, the officer was a first lieutenant at the time of his illegal discharge. He claimed, among other things, that if he had not been illegally discharged in 1945 he would have been successively promoted to the ranks of captain and major and should accordingly recover the pay of those ranks rather than the pay of a first lieutenant. The court denied this portion of Boruski's claim on the ground that no action appointing him to higher rank was ever taken. In the instant case, however, plaintiff actually did receive an appointment to the rank of captain but the appointment was withheld on the mistaken ground that plaintiff was mentally incapacitated from performing the duties of that rank. Inasmuch as the ground for withholding the appointment did not in fact exist, under the terms of the Navy regulations plaintiff's appointment became effective as a matter of law on March 1, 1943, and from

that date he should have received the active duty pay of a captain. See Nelson v. United States, Ct.Cl., 156 F.Supp. 724.

Finally, defendant contends that despite the fact that plaintiff was physically and mentally fit to accept the promotion to captain on March 1, 1943, he probably would not have received the promotion because of three fitness reports which defendant has produced and attached to its motion for summary judgment. Those reports cover plaintiff's performance of duties during the month of October, 1942, before he left for Samoa, from December 14, 1942, to January 18, 1943, after plaintiff's arrival in Samoa, and from January 19, 1943, to February 13, 1943, when plaintiff entered the hospital in Samoa. The reports contain some curious inconsistencies and many of the elements could not be rated because at that early stage of plaintiff's career in the Marine Corps, his performance had not been observed.[6] However, we do not feel required to pass on what the Marine Corps might have done in the light of those three reports if plaintiff had not been in the hospital under a diagnosis of insanity at the time his promotion to captain would have become effective. Plaintiff was confined to the locked ward as an insane person at that time and the Marine Corps has itself certified that it withheld his promotion only on that account. Furthermore there is no showing that plaintiff's service record was not taken into account by the Navy when his promotion was issued.

While, as urged by defendant, plaintiff's commanding officer could, in a proper case, have withheld plaintiff's promotion to captain for the reason that, in the opinion of such commanding officer, plaintiff's performance of his duties had not been satisfactory, there is no indication in the entire record in this case that the promotion would have been withheld for that reason if, on the effective date of the promotion, plaintiff had not been confined in the hospital under an erroneous diagnosis of insanity.

However, in our opinion, the most conclusive ground for holding that the three fitness reports (covering a period of three months) should not be deemed a valid reason for denying plaintiff the pay of a captain from the effective date of his promotion to that rank, is that on two occasions, subsequent to March 1, 1943, plaintiff received from no less a person than the Secretary of the Navy, formal certificates of Satisfactory Service covering his *entire* Marine Corps Service. The first certificate was issued to plaintiff at the time of his illegal and erroneous discharge from the Marine Corps on April 11, 1944. The second certificate was issued to plaintiff by the Secretary on April 7, 1948, pursuant to the order of the Board for the Correction of Naval Records.

We are of the opinion that the issuance to plaintiff of the second Certificate of Satisfactory Service on April 7, 1948, by the Secretary of the Navy, has special significance. According to the of-

6. An examination of the reports in the light of the whole record indicates that the three fitness reports were prejudiced and largely unwarranted by the true facts. Among other things, the rating officers reported that plaintiff was in the habit of reporting sick and was developing into a sickbay soldier. It would appear from the record that plaintiff had good reason to feel ill and that the reason was no fault of plaintiff. While he was in training in Quantico, he was involved in a jeep accident and he severely injured his spine. (He later received a pension from the Veterans' Administration for traumatic arthritis caused by this injury.) Later while en route to Samoa aboard the USS Henry T. Allen, plaintiff suffered a head injury while in the proc-

ess of cocking a 20 millimeter gun during an alert. He was treated in his quarters because there were two cases of spinal meningitis in the ship's hospital. Later, there was one of the mix-ups characteristic of this case, in connection with X-rays. Prior to his entry into the hospital in Samoa for treatment for bronchitis, plaintiff had been treated for this ailment by what appears to have been negligent over-doses of sulfathiazole—15 grains four times a day, 1800 grains in the 30 days of treatment. The toxic effect of this drug on plaintiff's kidneys and equilibrium undoubtedly contributed to his irritability and apparent inability to get along with some of his associates.

ficial records of the Correction Board proceedings in plaintiff's case, those three unsatisfactory fitness reports were thoroughly considered by the Correction Board in connection with plaintiff's 1947 application for correction of his record. Although the reports were not mentioned in the findings and decision of the Board in 1948, the three fitness reports, along with plaintiff's entire background in the Marine Corps and in the Army, were meticulously reviewed by the Board as a factor in determining plaintiff's "general personality index" while in the Marine Corps, and also as a factor in determining whether plaintiff was entitled to receive a Certificate of Satisfactory Service in connection with the new and corrected discharge which plaintiff was seeking. In deciding what, if any, corrective action should be taken in plaintiff's case in 1948, the Board could have, and on other occasions has, ordered merely that a new discharge be issued in lieu of the old, but that a Certificate of Satisfactory Service should be withheld. In plaintiff's case, *despite the three unsatisfactory fitness reports,* the Correction Board, on the basis of plaintiff's total military service record, directed that plaintiff be given a Certificate of Satisfactory Service to accompany the new honorable discharge, and the Secretary of the Navy accordingly certified that plaintiff's performance of his duties as a Marine Corps officer had at all times been satisfactory. We must assume that the issuance of the 1948 certificate was an attempt by the Secretary to enable plaintiff to secure *all* of the benefits to which his over-all Marine Corps service entitled him. One of those benefits was his promotion to captain in 1943.

Presumably, a Certificate of Satisfactory Service means what its name implies, i. e., that for the period covered thereby, the services of the recipient were satisfactorily performed. It therefore appears to us that when the services of this plaintiff were officially and advisedly certified by the Secretary of the Navy as satisfactory on two separate occasions, notwithstanding the Secretary's knowledge of the three unsatisfactory fitness reports, those fitness reports must be deemed to have been superseded and negatived as a matter of law. As a matter of fact, it seems obvious that the Correction Board and the Secretary of the Navy inquired into and knew the facts and circumstances under which the fitness reports were made and they did not concur in those reports. [See footnote 6 supra.] The record justifies the conclusion that the reports were prejudiced and unwarranted basically.

On November 25, 1955, the Board for the Correction of Naval Records found that plaintiff had been nominated on March 1, 1943, for promotion to captain, but that his promotion had been withheld for the sole reason that he was then in the hospital under an erroneous diagnosis of insanity. The Board found that it was apparent from plaintiff's record that his temporary promotion to captain would otherwise have been effective and "that he would have served satisfactorily in that rank." The Board also found that plaintiff had received a Certificate of Satisfactory Service on April 11, 1944, and again on April 7, 1948, and concluded that plaintiff had suffered an injustice because of the failure of the naval authorities to promote him to the grade of captain as of March 1, 1943. The Board then found that plaintiff *was* promoted to captain on March 1, 1943, that he *was qualified* therefor in all respects, and that he did not decline the appointment. The Board recommended that the Secretary of the Navy determine that the highest grade and rank in which plaintiff performed satisfactory service was that of captain, and that the Certificate of Satisfactory Service originally issued in the grade of 1st lieutenant be corrected accordingly, *and that the Navy pay to plaintiff all monies lawfully found to be due as a result of that corrective action.*

On December 23, 1955, the Secretary of the Navy returned the above described findings, decision and the record, to the Correction Board directing the Board to reconsider the matter in the light of the three fitness reports which, the Secretary indicated, might have persuaded plaintiff's commanding officer in 1943 that

plaintiff lacked the necessary qualifications or potentialities for promotion to the rank of captain. The Board then reconsidered the matter and sought the advice of its legal examiner, Mr. Overton Harris. Mr. Harris prepared an exhaustive brief advising the Board that although the three fitness reports had not been specifically mentioned in the 1948 decision of the Board nor in the decision of November 25, 1955, the reports *had* been carefully considered by the Board and the Secretary on both occasions; that the Board's decision to issue the 1948 Certificate of Satisfactory Service, and the 1955 decision of the Board to further correct plaintiff's record to show his promotion to captain on March 1, 1943, *were made with full knowledge of those reports*. After a lengthy and well reasoned discussion of the matter, Mr. Harris concluded that since Egan had been officially certified at the direct instigation of the Correction Board, as having satisfactorily performed his entire service in the Marine Corps, and since his promotion of March 1, 1943 had been withheld solely on the ground of his hospitalization as an insane person at that time, his promotion to captain as of March 1, 1943, could not properly be denied by the Board in 1955. Mr. Harris recommended that the Board adhere to its decision of November 25, 1955.

On March 2, 1956, the Board for the Correction of Naval Records issued a revised decision in which it found that the unsatisfactory fitness reports precluded plaintiff's appointment in 1943 to the rank of captain, and the Board recommended that "no change be made in Petitioner's naval record." In the course of a brief decision, the Board did not discuss any of the points called to its attention by its legal examiner, and did not even mention the outstanding certificates of satisfactory service which had been issued to plaintiff in 1944 by the Secretary of the Navy, and in 1948 by the Secretary at the express direction of the Correction Board. Furthermore, the Board did not suggest that those certificates be vacated.

From the record of the Correction Board proceedings had in connection with plaintiff's application for the administrative payment of his claim for lost pay, it appears that the denial of his application by the Board in 1956 was based solely upon the three fitness reports which had been previously considered and rejected in 1948 when the Board corrected plaintiff's record and ordered the issuance of a new Certificate of Satisfactory Service. We are of the opinion that under all the circumstances of this case and in view of: (1) the Certificate of Satisfactory Service issued to plaintiff by the Secretary of the Navy on April 11, 1944, (2) the decision of the Correction Board in 1948 ordering that, despite the three fitness reports, plaintiff be given a new Certificate of Satisfactory Service, (3) the second Certificate of Satisfactory Service issued to plaintiff by the Secretary of the Navy on April 7, 1948, on the recommendation of the Correction Board, and (4) the correction of plaintiff's records in 1948 to show that *at all times* plaintiff was mentally and physically capable of performing the duties of an officer of the Marine Corps, no valid ground existed for the withholding of plaintiff's promotion to captain on March 1, 1943. Accordingly, we hold that the Correction Board and the Secretary of the Navy acted arbitrarily and illegally in 1956 when, *without any new evidence* and in the face of the two certificates of Satisfactory Service issued to plaintiff by the Secretary, they denied plaintiff's application for the administrative payment of his claim for the pay of a captain solely because of the three fitness reports.

As noted earlier herein, the final decision of the Correction Board in 1956 which was communicated to plaintiff, treated plaintiff's application for pay as though it were an application for a further correction of his record to show that plaintiff was promoted to the rank of captain on March 1, 1943. Plaintiff was *not* seeking a further correction of his record but only the pay due him under the 1948 correction of his record. If plaintiff had been seeking to have his record corrected to show that he was appointed a captain in 1943, he was clearly entitled to such a correction as the Board itself held in its decision of November 25, 1955. However, plaintiff was merely making application for the administrative payment by the Navy Department of the active duty pay which he had lost and which was due him as a result of the 1948 corrective action taken by the Marine Corps under section 207 of the

1946 Act, which corrective action had included the issuance of a second Certificate of Satisfactory Service. Both the 1951 amendment to the 1946 Act and the regulations of the Marine Corps issued thereunder, provide that an application for pay may not be made, and the Department may not settle any claim for such pay, until the record of the officer involved has been corrected. Plaintiff's record had been corrected; he had been issued a new Certificate of Satisfactory Service; and his claim for settlement was made strictly in accordance with the law and the regulations thereunder. Why the Correction Board did not, in its final decision of 1956, discuss plaintiff's right to recover some or all of the pay he claimed, but rather confined its discussion to his right to have his record corrected to show that he received his promotion to captain in 1943, we are unable to say. Plaintiff's application was clearly one for pay, and the Board had the benefit of extremely lucid memoranda from its legal examiner, Mr. Harris, on the true nature of plaintiff's application to the Board. It appears almost incredible that, after the careful consideration given to plaintiff's case in 1948 and the meticulous corrective action ordered and taken at that time, the Board and the Secretary in 1956 should add a final injustice and error to a record already notorious in that respect.

Upon the whole record, the refusal of the Navy to grant plaintiff his back pay as claimed was arbitrary on the facts found by the Correction Board and in the light of the issuance by the Navy of the two Certificates of Satisfactory Service covering all of plaintiff's service in the Marine Corps.[7] We are also of the opinion that the refusal to pay plaintiff was contrary to the express provisions and purposes of section 207(b) of the 1951 amendment to the 1946 Act and the Marine Corps regulations issued thereunder. Although the 1956 decision of the Correction Board says not a single word about "pay", which was the only thing plaintiff was asking for, we assume that the decision amounted to a denial of his application for such pay.

Even if plaintiff had not sought administrative payment of his lost active duty pay, he would still be entitled to recover such pay in this court on the ground that he was never legally and effectively released to inactive duty or discharged at least until April 7, 1948. See Berry v. United States, 107 F.Supp. 849, 123 Ct.Cl. 530; Register v. United States, 128 F.Supp. 750, 131 Ct.Cl. 98.

Defendant's motion for summary judgment is denied and plaintiff's motion for summary judgment is granted.

Plaintiff is entitled to recover the difference between the active duty pay and allowances of a captain and the active duty pay and allowances of a first lieutenant from March 1, 1943 to October 28, 1943, and to recover the active duty pay and allowances of a captain from October 29, 1943 to April 7, 1948, less his earnings from civilian employment during the latter period. With respect to the judgment of the court entered on January 13, 1953 in favor of plaintiff on count I of his petition in the amount of $5,752.30, representing salary wrongfully withheld from plaintiff by the Veterans Administration from November 26, 1946 to June 24, 1948, there shall be deducted from the present judgment on count II only so much of the former judgment as represents civil service pay due plaintiff prior to April 7, 1948, less plaintiff's reasonable attorneys' fees, necessary expenses and costs incurred in connection with obtaining judgment on count I. Judgment is entered to that effect with the amount of recovery to be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.

---

7. In the Correction Board record of plaintiff's case, there are numerous letters from the Secretary of the Navy to members of Congress and to representatives of the President stating that plaintiff was at all times physically and mentally capable of performing the duties of an officer of the Marine Corps; expressing regret that so many errors had been committed, and assuring those to whom the letters were addressed that correction would be gladly made.